Good morning, Your Honors. This case presents an issue of fundamental fairness for the retrial of a man who has already once been unconstitutionally convicted and sentenced to death. In challenging his first conviction and death sentence, David Ghent raised numerous constitutional violations in his habeas petition, including the ineffective assistance of counsel. In order to establish his right to a new trial, which he succeeded in obtaining, Ghent was compelled to disclose to the state and present evidence to the district court confidential, highly personal, and even privileged information that came from his original trial counsel and from experts that he had retained both at trial and on habeas. Recognizing that the state would not have had access to any of this confidential material but for the constitutional violation at Ghent's first trial, the district court at that time, Judge Ingram, issued a protective order that would protect the use and the disclosure of all of that information by the state at any subsequent retrial if Mr. Ghent succeeded in obtaining a new trial. Judge Ingram's original order was well within the bounds of his discretion. What about the modified order? Pardon me? There was an original order, then it was modified. I thought that was behind us. Subsequently, it's correct, Your Honor. I thought that was behind us. Judge Ingram's order? It's modified to say what it says. Now we're dealing with what the modified order says. Is that correct? That is correct. So subsequently, after this Court issued the mandate and granted the petition, granted the writ to Mr. Ghent, the State indicated it was going to retry him, and it sought to modify and vacate Judge Ingram's original order. And Judge White, at that time, after Judge Ingram passed away – We're beyond that, aren't we? I mean, we know that that's that, right? We're not going to debate that again, are we? We're not debating that again. Judge White did not modify the order in the first place. Then I guess we don't have to argue that again, do we? Let me ask you about Dr. Rappel and Dr. – is it Dellman? Correct. They testified in the State proceedings, right? That's correct. I take it we apply California waiver of privilege law on the issues of whether the privileges waived when they testified. And doesn't California say that when an expert testifies, all the stuff he relied on is gone? It's not privileged. You waived the privilege. Isn't that what California says? Well, Your Honor, I think that that was not the issue in front of the district court at the time or in front of this Court. I think he's asking a separate question. Whether – Is it waived or not under California law? The trial experts under – the trial experts who testified at the trial were subject to whatever criminal discovery rules provided at that time. So they were entitled to – Well, that's nice to say, but California says that you've waived the privilege once you call the experts as to anything they relied on. In fact, in many of the California cases, even when you relied on some of counsel's notes that would otherwise be privileged, those notes – that's waived because you, expert, relied upon them. Now, I thought the one thing we're trying to do here is seal stuff from Dr. Rappel and Dellman. The subsequent information that was developed by Dr. Rappel, yes, Your Honor. And to the extent that Dr. Dellman's notes and things were relied on by against habeas experts, it's the habeas experts whose testimony and evidence and notes are not – were originally protected by the protective order issued by Judge Ingram and have subsequently been released from that protection by Judge White in his most recent two orders. The question that was in front of Judge White was not whether or not the original trial evidence had – was there a waiver of the attorney-client privilege at the original trial. That was dealt with at the trial court. Subsequently, Gantt prepared – It wasn't dealt with at the trial court. They're now trying to re-prosecute him, right? That is correct. Are you suggesting that the privilege hooks onto those two guys again? Everything that was waived before now is privileged again? Are you suggesting that? No, Your Honor. What I am suggesting is that it's not a question of privilege. It's a question of the protective order that was in place for the habeas proceedings. So the information that Judge – that – excuse me – that Drs. Rappel and Dellman testified to at the State court trial are not an issue here. What is an issue is that Dr. Rappel and Dr. Marmar testified at the habeas proceedings. They interviewed Gantt. They reviewed his deposition. All of that was confidential. Everybody had understood that that was confidential. And Judge Ingram expressly said it couldn't be used. In their sense, protective orders and orders sealing are subject to modification at any time. So they had to take the risk on that, knowing that the rules of privilege might apply or not apply later. Well, Your Honor, yes, protective orders are subject to modification within the case, but the Ninth Circuit law on this point was clear in that a previously issued protective order has never been modified post-judgment without some compelling showing by the State of either there was a clear error of law, there was a changed circumstances, or there was new evidence to merit a change. Under McDowell, it's treated as a Rule 59e motion or a Rule 60 motion to modify the judgment. This was a case where the protective order was in place during the evidentiary hearing. And subsequently, the State made no showing to modify it 10 years after it was originally issued. And that's what happened here. So let's say there's a – in a different context, you have the media coming in post-judgment and requesting that an order be unsealed. Certainly that can occur, even though both parties object to it. It's clearly within the discretion of the Court, is it not? I agree, Your Honor. I think that the – frankly, I think that the sealing order, from our point of view, was really belt and suspenders. The meat of the protective order was that it prohibited the State from using the information to retry Gantt. Whether the media got it or not, the State was bound, the prosecutor and the Attorney General's office were bound by the protective order that Judge Ingram issued, and that Judge White confirmed when he first issued his first order when he took over the case in 2003. Yes, the media could have gotten information because the trial was open. I don't believe that we could have closed the trial or sealed all the record in the capital habeas case at that time. But it's a different question than whether or not the State could then go back, the prosecutor could go back, and then use that information to retry Gantt, potentially creating yet another unconstitutional conviction if he's reconvicted again, using evidence that he was compelled to give in violation of his – he had to waive his Fifth Amendment right. It's not just about the attorney-client privilege. This really goes much beyond the privilege issues and the waiver issues. I understand that Bitteker addressed really the scope of the waiver of the attorney- client privilege, but as Judge O'Scanlan noted in his concurrence, it's – the issue of the privilege is really a side issue. It's a narrow issue that the Federal courts don't need to decide how the State courts are going to interpret the privilege. It's more a question of fundamental fairness, that having been compelled to produce this evidence in order to secure a new constitutionally error-free trial, Mr. Gantt and other Petitioners have to put on evidence and disclose evidence that the State would otherwise never have had access to. It would never have gotten that. Roberts. I think we should leave the argument at hand. Do you want to save some time for a vote? I would. Thank you. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court. Joan Keeling for Respondent. Excuse me. I think these issues have been quite thoroughly addressed in the briefs, and, of course, I'm happy to answer the Court's questions, but I'll just make a few points and, of course, be prepared to answer any questions the Court has. Procedurally, I think the Court understands that this is an appeal from the March 2009 order of the district court. That order was not an order modifying the protective order. It was an order that interpreted the protective order that was issued in 2003, I believe. Yes, it was issued in 2003. And the Court, I mean, I'm sure the Court's familiar with the general history of the case, but Respondent had moved to modify the protective order to release some information after this Court reversed the sentencing issues. And that case went up before the Ninth Circuit before it was decided in 2004, and the Court affirmed the modified protective order issued in April 2003. And we've been proceeding on that order ever since. It was what the district court has consistently referred to as the modified protective order. And, again, in the first appeal, agreed that was a proper exercise of the Court's discretion. That modified protective order did narrow the scope of the order from the original order entered by Judge Ingram at the time of the evidentiary hearing and made it clear that it applied to trial counsel's privilege and work product information, and it extended to trial counsel, trial counsel's investigator, trial counsel's expert witnesses as far as any privilege information remained, and that would be the same as it did to Drs. Raffel and Delman and to Ghent's deposition, which we had agreed would be confidential. In California, if a convicted dependent seeking post-conviction relief, California's in-state post-conviction review files by the mere act of filing, does the seeker of that relief waive attorney-client privilege? As far as I know, they do, Your Honor. We cited the case of people... That's my understanding of the law. Yeah. We cited people via La Desma, and, in fact, it brings up a good point. In this case... I have a follow-up question, and you can respond as you wish. Oh, go ahead. Okay. So the state law of California is that you do waive by filing? The habeas corpus, yes. And what's the rule in the Ninth Circuit? Does a petitioner seeking habeas relief by virtue of filing that petition waive attorney-client privilege? Well, under Biddeker... Do you have a yes or no? I would say the Ninth Circuit has said that the habeas petitioner waives his attorney-client privilege by filing the habeas petition, but a protective order can and should be instituted to protect the privilege, the attorney-client privilege information so that it cannot be used on the retrial. Okay. And we've agreed with that since 2002. Even though we filed a motion to modify the protective order, we addressed issues outside of materials that fell within attorney-client privilege and work product. What is the difference between matters that are protected by the attorney-client privilege and work product? Well, in terms of this case, for example, we had Mr. Green was the trial attorney, and he had his files, and he had written various notes and what have you, and Gantt had written some notes to him, and he had consulted with the experts, and he had notes regarding those. So that those documents were his work product. They weren't introduced at the trial or anything. They were his work product, information that he had compiled in preparing his defense of Mr. Gantt in 1979. And the privilege information would refer to that. Work product is basically a subset of the privilege. So, you know, to the extent Gantt made statements to Mr. Green, those would be privileged. I'm not actually aware of statements he made, but to the extent that he made statements, they had conversations, those are privileged. The documentary preparation he did for trial was privileged. If he had hired experts, for example, as occurs in some cases, he had hired experts to examine Gantt and then did not present them at trial, that would have been work product. In this case, he hired Drs. Delman and Raffel as mental state experts at the trial, and they testified both extensively, several hundred pages of testimony, and essentially revealed voluminous information about Gantt because he presented a mental state testimony. He admitted a rape and murder, and the sole issue was his mental state at the time. So those two doctors had testified extensively, and as the Court pointed out earlier, once those doctors testified at the trial, then their dealings with Gantt were no longer privileged. But the district court in this case has very carefully gone through the records and documents presented, not only in the evidence you're hearing, but in some of the prior filings, and determined which of those documents fell within attorney-client privilege or work product, or revealed, for example, parts of Gantt's deposition, and then which did not. And the modified protective order specifically adhered to Biddecker and applies to attorney-client privilege and work product, and the court, the district court made it clear it was trial counsel, not subsequent habeas counsel, that was at issue. Roberts. As to the, let's say, experts who testified or put in declaration, whatever, appeared at the habeas Federal court proceeding, it appears that the modified order doesn't specifically cover those at all, the original, the modified order in February or whatever. So if Dr. X testified at the habeas proceeding, that's not sealed? Yes, Your Honor, that's correct. The modified protective order specifically says attorney-client privilege and work product information, it defines protected information, does not apply to the habeas experts who testified. And just to clarify, because I think there was some confusion in counsel's argument, Dr. Raffel was a mental state expert for the trial. He was a witness at the hearing solely to testify to information he had been provided by trial counsel in support of the claim that trial counsel should have presented one mental state defense and not another. He did not interview Gantt at any time in the habeas proceedings, and he did not testify to any new information in the habeas proceedings, except to the extent that he said had he had certain military records and what have you, he might have presented a different defense. But he was not an expert witness at the hearing, except to discuss what he had done with, you know, counsel before. There were two new mental state experts at the hearing, Drs. Marmer and I forget the other one, but there were a couple of new mental state experts. They reviewed much of the information that had been presented at trial, including Dr. Raffel's and Delman's notes and other information, and then they compiled new information to support the argument in favor of the new PTSD mental state defense as opposed to the earlier diminished capacity defense. But the modified protective order does not cover those habeas corpus experts who solely came in to say this is the defense Gantt should have, you know, been presented. This is the defense that his counsel should have presented. So we have a modified protective order, which this Court affirmed in 2004. So then the State, no, we have not filed any motion of any kind since that time in the district court to seal orders and argue that they fell within the scope of the modified protective order. Since 2005, the Court's issued three orders. The Court has them all, and in each one, the Court made it clear that it found some documents clearly fell within the modified protective order, and those were clearly attorney-client privilege and work product. Some clearly did not fall within the protective order, and those involved a large amount of information that came either from the trial or other sources that weren't from counsel's files or work product. And then there was the gray area that Judge White asked for further briefing on. And so then there was further briefing. The Court issued two subsequent orders. But our argument is that the Court never indicated. We never asked the Court to modify the order after the Ninth Circuit affirmed it. We proceeded on that. We have not been the moving party, and we've been, you know, the argument is that we failed to make certain showings, but we were not the moving party. We never asked for any modification. We accepted the order that this Court affirmed. We moved on. Gant also accepted that order, and his arguments were always to the effect, well, these documents should fall within. And then he argued, well, even if they don't fall within, they should be protected anyway. The district court has always adhered very clearly to its own modified protective order and said in each of its orders, you know, this is what it covers, doesn't cover these. You haven't given me any reason to cover these. And so those were not modifications. Gant never argued they were modifications. This is the first time he's ever argued that an order interpreting and sealing documents constituted a modification. So, you know, our position is that we're here solely on the March 2009 order denying reconsideration of the earlier refusal to seal documents outside the protective order. And, you know, Gant obviously got there were thousands of documents in this case. Gant got much of it sealed. He, you know, the Court went through the transcripts, obviously page by page, sealed significant amounts of information, and there's just been no showing whatsoever that what the Court has done here was either an abusive discretion or constituted clear error. And just one final note. Counsel in her argument brought up for the first time ever in these proceedings an argument that Gant's Fifth Amendment privilege was involved here. I've never heard that argument before. It's not been briefed, and I think it's an inappropriate argument to make here. Okay. Thank you, Your Honor. I'm happy to submit if the Court has no further questions. Thank you. Thank you. Two points in particular I'd like to respond to. One is that the April 2003 order from Judge White did not substantively modify Judge Ingram's order, which expressly covered the habeas experts. And everybody understood that that was the case. Everybody understood that the 2003 order still covered the experts. That is why the State appealed. The State expressly appealed because the State did not get what it sought, which was the ability to use the expert testimony and expert evidence at Gant's retrial. Judge White denied that motion, denied it, and this Court affirmed. And that is what everybody was operating on. Of course, Gant did not appeal that order because it covered what he believed that it did cover, his attorney information and his experts information, exactly like Judge Ingram had protected when he started his evidentiary hearing. Subsequently, in 2008, the State concedes it didn't move, it didn't make any compelling showing to modify, and inexplicably, Judge White then did modify in 2008 the original protective order. In 2008, for the first time ever, Judge White said this order only applies to trial counsel's files. It doesn't apply to habeas counsel's work product and the expert testimony that was created for the habeas proceedings, where previously for the earlier 10 years everybody had been operating under the assumption that the habeas experts materials were protected. And specifically, footnote 1 of the 2008 order says, Documents reflecting the testimony of experts retained by Petitioner to testify in the habeas proceedings would not be subject to the modified protective order, except, for example, that portion revealing privileged material in support of a showing of ineffective assistance of counsel. That was the first time Gant or the State had heard that decision, and that constitutes a substantive modification of the protective order. Whether or not Judge White called it a modification of the protective order is, frankly, irrelevant. The fact is it was substantively modified at that point. And the irony of it is that the, whether or not these documents were sealed or not sealed, Gant was ordered to file a request, a proposed sealing order in the original 2003 order. He didn't decide, oh, I want to move to seal all of this as a belt and suspenders on top of the protective order already protecting. Judge White ordered him to file a proposed protective order, I mean, a proposed sealing order identifying those documents. So he did that. And it was only through those subsequent proceedings that it then turned out that Judge White modified the order. Now, if Judge White intended in 2003 to modify the protective order to exclude, to release from protection the expert's testimony, then that is, the abuse of discretion happened there. Because at that point, under the McDowell standard, the State had made no showing that the original order should have been modified as clearly arranged. Roberts. In the 2003 order? I thought that that had been appealed. I thought that had been upheld. The 2003 order was upheld. So let's say there was an abuse of discretion, and so what? In the 2003 order? Yes. You're arguing, well, he, if that's what he thought, he must have abused discretion in the 2003 order. I don't believe that. And that's what I thought. You keep insinuating this case, and that's why I was trying to focus on that before. Right. So what? Well, Your Honor, I don't believe, and I don't believe that the State believes that the 2003 order did, was an abuse of discretion. Well, but you said if it was, he abused his discretion there. And I'm saying, and? Are we supposed to do something about that? I think that to the extent that the protective order, that Judge Ingram's protective order has now subsequently been narrowed in a way that is prejudicial to Mr. Gant, then, yes, I think at this point You're not answering my question. Your statement was, if indeed it means what it seems to say, then there was an abuse of discretion, then. And I'm asking you, and so what? Does that make any difference? I think it does make a difference, Your Honor, because that issue wasn't appealed. Why? Why does it make a difference if that's finished, that's been done, it's on appeal, it's been finished? Because that question was never appealed. That question was never appealed. Here's my question. Fine. Now, I'm looking at ER page 7. And this is Judge White's March 09 order. And at line 22, he says, Thus, the moment that petitioner's expert witness relied on the documents at issue at petitioner's trial. You want me to wait while you grab that? I'm not taking it. They cease to be protected work product. Since the documents were not protected work product during petitioner's trial, they are not protected work product now. That's what you say is an error. Correct. Yeah. What's your best case for saying that that statement is inconsistent with Ninth Circuit or Supreme Court law? Because the the I'm asking for a case. What's your best case that says when Judge White says, and I take it this is the heart of the matter as far as your client is concerned, since the documents were not protected work product during petitioner's trial, they are not protected work product now. That's what you say is wrong. Correct? That is correct. Although Okay. What's your best case to say that when Judge White said that, that's wrong? It's inconsistent with Smith v. Jones or Blackacre or whatever. What's your best case? I think that the best case is Bitteker on that point, because Bitteker expressly covers the attorney-client privilege, and what Judge White's talking about here is not the State trial. He's talking about the evidentiary hearing. The Federal Rule of Civil Procedure 26, of course, did not apply to the State trial. It applied to the evidentiary hearing. And so the expert testimony that was revealed in the Federal proceedings were applied the Federal work product rules. Do you rise or fall on Bitteker? I believe so. Okay. All right. Any further questions? Thank you, counsel. The case has turned. It will be submitted for decision. Thank you. All rise.
judges: Fernandez, Hawkins, Thomas